RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STEPHANIE L. STEIGERWALD,

　　　　　　　　　　*Plaintiff-Appellee*,

　*v*.

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　　　　　*Defendant-Appellant*.

┐
│
│
│
│
│  No. 21-3023
│
│
│
│
┘

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:17-cv-01516—James S. Gwin, District Judge.

Argued: October 28, 2021

Decided and Filed: September 9, 2022

Before: MOORE, KETHLEDGE, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Dennis Fan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. William Escobar, KELLEY, DRYE & WARREN LLP, New York, New York, for Appellee. **ON BRIEF:** Dennis Fan, Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. John H. Ressler, ROOSE & RESSLER, Lorain, Ohio, Ira T. Kasdan, Bezalel A. Stern, KELLEY, DRYE & WARREN LLP, Washington, D.C., Joseph A. Boyle, KELLEY DRYE & WARREN LLP, Parsippany, New Jersey, for Appellee. Neil H. Good, THE GOOD LAW GROUP, Palatine, Illinois, for Amicus Curiae.

　　　MOORE, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pp. 16–17), delivered a separate dissenting opinion.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  The Social Security Administration (SSA) failed to perform a statutorily obligated duty to pay claimants the total amount of benefits to which they are entitled.  To ensure that claimants receive the entirety of these benefits, Congress enacted two provisions in the Social Security Act:  a judicial-review provision to keep the agency honest and an attorney-fees provision to incentivize lawyers to represent claimants.  Because the SSA may not hide behind these statutory provisions merely because it erred at the end, rather than at the beginning, of the benefits-award process, we affirm the judgment of the district court.

## I.  BACKGROUND

As the district court in this case rightly noted, "[t]he mechanics of the alleged underpayment are fairly byzantine," so we provide a summary for clarity.  *Steigerwald v. Berryhill*, 357 F. Supp. 3d 653, 654 (N.D. Ohio 2019).  The SSA awards a claimant a certain amount of benefits, which a claimant may challenge through a series of procedural steps that involve a hearing before an Administrative Law Judge.  *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Those benefits are awarded pursuant to Title II of the Social Security Act, 42 U.S.C. § 401–434, which provides individuals with disability benefits, and Title XVI of the Social Security Act, 42 U.S.C. § 1381–1385, which provides individuals with need-based supplemental security income.

A claimant's income impacts eligibility for and the amount of Title XVI benefits, and any disability benefits that a claimant receives under Title II are considered income under Title XVI. *See* 42 U.S.C. § 1382(a)–(b); 1382a(a)(2)(B).  Accordingly, when a claimant applies for and receives monthly Title II and Title XVI benefits concurrently, the SSA reduces a claimant's monthly Title XVI benefits by any Title II benefits received during those same months. *See id.*

The same principles apply when a claimant retroactively receives past-due Title II benefits, or "benefits that accrued before a favorable [SSA] decision." *Culbertson v. Berryhill*, 139 S. Ct. 517, 520 (2019). When a claimant receives past-due Title II benefits, the SSA adjusts any need-based Title XVI award to account for the claimant's additional award of past-due Title II disability income. *See* 42 U.S.C. § 1320a-6(a). In applying this adjustment, the SSA reduces a portion of a claimant's total past-due benefits because any past-due Title II payments would have increased the claimant's income in the same months that Title XVI benefits were due. *See id.* Congress enacted the statutory provision governing this process to prevent a windfall to the claimant merely because the claimant obtained past-due Title II income in one lump sum rather than in monthly payments. *See* S. Rep. No. 96-408, at 78 (1979). The SSA calls this adjustment the "windfall offset calculation."

When a claimant hires a representative, such as an attorney, to assist in obtaining past-due benefits before the SSA, an additional wrinkle complicates the SSA's benefit calculations. A claimant may elect to pay the representative fees out of the award of past-due benefits. *See* 42 U.S.C. § 406(a); § 1383(d)(2). Sometimes, the SSA awards the representative fees after it has already performed the windfall offset, i.e. reduced the award of past-due benefits to account for a claimant's Title II income. *See* Social Security Program Operations Manual System (POMS), SI 02006.200 § A.4, available at https://go.usa.gov/xs92e. But because the representative-fee award is paid out of and reduces the claimant's award of past-due benefits, the representative-fee award reduces the claimant's income. *See* 42 U.S.C. § 1320a-6(a). The claimant's reduction, or "subsequent change[]," in income consequently causes the claimant's need-based Title XVI benefits amount to increase in some cases. *See* 20 C.F.R. § 404.408(b)(d). Therefore, after the SSA takes representative fees out of a claimant's past-due benefits, the SSA is supposed to perform the windfall offset recalculation again and award the claimant any difference in benefits. *See* 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. § 416.1123(b)(3); POMS SI 02006.200 § A.1. This case originated from the SSA's failure to perform this second windfall-offset calculation, known as the "Subtraction Recalculation," for the classes of claimants who sought relief. When applied to many claimants, this difference can amount to a substantial sum.

Fees that attorneys or representatives recover for their work in proceedings before the SSA under 42 U.S.C. § 406(a) (such as the fees that provide the impetus for the Subtraction Recalculation) are distinct from fees that attorneys recover for their efforts in litigating in federal court, which are governed by 42 U.S.C. § 406(b). *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002) ("The statute deals with the administrative and judicial review stages discretely: § 406(a) governs fees for representation in administrative proceedings; § 406(b) controls fees for representation in court."). In this appeal, Class Counsel seek to recover the latter type of fees. Once Class Counsel discovered the SSA's systemic failure to perform the Subtraction Recalculations, they recovered over $106 million in past-due benefits for the class of claimants through litigation before the district court. *Steigerwald v. Saul*, No. 1:17-CV-01516, 2020 WL 6485107, at *1 (N.D. Ohio Nov. 4, 2020); *Steigerwald*, 357 F. Supp. 3d at 658. After performing the Subtraction Recalculations for all the claimants, the SSA now argues that the district court did not have authority under the Social Security Act's judicial-review provision, 42 U.S.C. § 405(g), to order the Subtraction Recalculations. Therefore, the SSA argues, Class Counsel cannot recover attorney fees under § 406(b) for Class Counsel's representation of the claimants in federal court. On appeal, the SSA challenges the district court's award of $15.9 million in attorney fees to Class Counsel. *Steigerwald*, 2020 WL 6485107, at *6.

## II.  ARTICLE III STANDING

Before proceeding to the merits, we follow our "obligation to assure ourselves of litigants' standing under Article III." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)). Article III standing requires a party to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). On appeal, Class Counsel argues that because fees in this case are awarded out of claimants' past-due benefits, the SSA has no monetary interest, and therefore has suffered no injury in fact to support standing.

Class Counsel's argument does not persuade us. Broadly speaking, the SSA retains an interest in benefiting disabled persons through its "humanitarian policy." *Lewis v. Sec'y of Health & Hum. Servs.*, 707 F.2d 246, 248 (6th Cir. 1983). Even without a pecuniary stake, the

SSA maintains an obligation to promote those interests. *See In re Debs*, 158 U.S. 564, 584 (1895). Specifically, in an attorney-fees case proceeding under § 406(b) such as this one, the SSA represents the "interests of the claimant whose benefits pay for the fees." *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 308–09 (6th Cir. 2014). Indeed, we have noted that the government is "entitled to participate in attorneys' fees adjudications under 42 U.S.C.A. § 406(b)" because "the Secretary 'retains an interest in the fair distribution of monies withheld for attorney's fees.'" *Lewis*, 707 F.2d at 248 (quoting *Moore v. Califano*, 471 F. Supp. 146, 149 (S.D.W.Va. 1979)). Without questioning the government's standing, we have exercised jurisdiction over appeals challenging § 406(b) attorney-fee awards. *Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (en banc); *Lasley*, 771 F.3d at 308–09. So has the Supreme Court. *See Gisbrecht*, 535 U.S. at 798 n.6 (2002).

In an attempt to sidestep these cases, the SSA focuses on an analogy that the Court made in *Gisbrecht*—that the Commissioner's role "resembl[es] that of a trustee for the claimants." *Id.* According to Class Counsel, the SSA has disavowed its role as trustee by taking adverse positions to the claimants in this litigation and thus cannot rely upon its interests in claimant protection to confer standing. Class Counsel takes the Court's analogy too literally. Although the SSA may have taken positions adverse to the claimants on the merits in this case, the SSA still retains an interest generally to protect the beneficiaries that it serves, which it asserts in this attorney-fee challenge. These interests sufficiently confer standing to the SSA under Article III.

## III. ATTORNEY FEES UNDER THE SOCIAL SECURITY ACT

Assured of the SSA's standing under the Constitution, we turn next to the statutory foundation for awarding attorney fees. Pursuant to 42 U.S.C. § 406(b), a district court may award attorney fees when the court "renders a judgment favorable to a claimant under" Title II and Title XVI[1] of the Social Security Act. To enter a "favorable" judgment, the district court must properly exercise jurisdiction under the Social Security Act's judicial-review provision. 42 U.S.C. § 405(g). That provision allows for judicial review of "any final decision of the

---

[1]Although § 406(b) pertains to judgments under "this subchapter," i.e., Title II of the Social Security Act, § 1383(d)(2)(A) additionally extends the availability of attorney fees under § 406 to favorable judgments under Title XVI.

Commissioner of Social Security made after a hearing." *Id.* In reviewing SSA actions, the district court possesses "the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." *Id.* Thus, a district court may award attorney fees under § 406(b) only if the district court properly exercised its authority under § 405(g) to enter the judgment for which it is awarding fees. To determine whether the district court properly awarded fees, we examine first whether the district court properly ordered the class-wide windfall-offset recalculation pursuant to § 405(g), and if so, whether the district court properly awarded attorney fees under § 406(b) to Class Counsel for procuring that result.

## A. Presentment

Section 405(g) "contains two separate elements: first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith*, 139 S. Ct. at 1773 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). In its opinion denying the SSA's motion to dismiss, the district court rejected the SSA's argument that Stephanie Steigerwald, the class representative, failed to present her claims pursuant to § 405(g) and thus that the district court lacked jurisdiction. *Steigerwald v. Comm'r of Soc. Sec.*, No. 1:17-CV-1516, 2018 WL 454400, at *4 (N.D. Ohio Jan. 17, 2018). Even though the SSA does not challenge this determination on appeal, the dissent nonetheless protests that Steigerwald failed to present her claims to the SSA and that the district court lacked jurisdiction. Dissent at 17.

But as the district court noted, Steigerwald's attorneys sent the SSA a letter informing the SSA that they would not be seeking more attorney fees and asking the SSA to "release the withheld benefits" to Steigerwald. *Steigerwald*, 2018 WL 454400, at *3–4. Not only did Steigerwald present her initial claim for benefits to the SSA, but she also requested that the SSA perform the Subtraction Recalculation. Steigerwald asked the SSA for the specific relief that she sought, and we agree with the district court that presentment requires nothing more. *See Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (holding that respondents satisfied presentment requirement by filing a claim for surgery reimbursement with Medicare administrator); *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 615, 618 (6th Cir. 2019) (holding that medical services contractor "presented its claim for benefits to the relevant agency" by challenging a Medicare auditor's

decision). Because Steigerwald presented her claim to the agency, the district court properly exercised jurisdiction over this case. The question at the heart of this case—whether SSA's action was a "final decision . . . made after a hearing" for the purposes of judicial review—instead "involves the latter, nonjurisdictional element of administrative exhaustion." *Smith*, 139 S. Ct. at 1773–74.

**B. Preservation**

We pause to address Class Counsel's myriad preservation arguments. Because this case involves the waivable issue of exhaustion, the question of whether the SSA properly preserved its judicial-review arguments merits consideration. Preservation questions loom especially large in this case because we are addressing, at this late stage of litigation evaluating attorney fees, whether the district court even had the authority to issue the order that led to these fees at all. Nevertheless, we conclude that we may reach the SSA's arguments, either because the district court addressed them or the SSA properly preserved them.

The SSA argues first that the district court had authority to order the Subtraction Recalculation, just not under the authority that Class Counsel cites. On appeal, the SSA grounds the district court's authority in the Mandamus Act, 28 U.S.C. § 1361, which grants district courts original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," rather than § 405(g). Class Counsel asserts that below, the SSA argued just the opposite: that Mandamus Act jurisdiction was inappropriate because § 405(g) "clearly [provides] an adequate alternative remedy" and the named plaintiff "could have brought a claim under § 405(g)." R. 18-1 (Mot. to Dismiss at 18) (Page ID #183) (quoting *Ringer*, 466 U.S. at 617). According to Class Counsel, the SSA waived its argument by changing positions on appeal.

Notwithstanding the SSA's vacillation on the source of the district court's authority, we find it appropriate to address the SSA's judicial-review argument. The SSA's argument at the motion-to-dismiss stage focused on an entirely different issue (whether the plaintiff properly presented her claims before the SSA) and did not resemble an "intentional relinquishment or abandonment of a known right" that characterizes waiver. *Ohio State Univ. v. Redbubble, Inc.*,

989 F.3d 435, 443 (6th Cir. 2021) (quoting *United States v. Petlechkov*, 922 F.3d 762, 767 (6th Cir. 2019)).  We have addressed an issue raised for the first time below, moreover, "[where] the district court fully addressed the argument in its order and [where] both parties fully briefed the issue on appeal."  *Salling v. Budget Rent-A-Car Sys., Inc.,* 672 F.3d 442, 444 (6th Cir. 2012) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).  Here, the district court addressed its authority under § 405(g) below after the SSA raised the issue in its motion to amend the district court's summary-judgment order, *Steigerwald v. Berryhill*, No. 1:17-CV-1516, 2019 WL 1433851, at *1–2 (N.D. Ohio Apr. 1, 2019), and the parties have presented their arguments to us on appeal.  We see no reason to avoid the issue at this juncture.

Class Counsel further argues that the SSA failed to preserve its arguments on appeal because (1) the SSA should have timely appealed the district court's finding in its summary-judgment order that class counsel were eligible for fees and yet failed to do so and (2) the SSA should have raised the district court's lack of judicial-review power when it challenged the district court's eight-month deadline to complete the Subtraction Recalculations in a separate appeal (Case No. 19-3527).  A party may wait, however, for a district court's determination of the amount of attorney fees owed to challenge liability for attorney fees.  *Morgan v. Union Metal Mfg.*, 757 F.2d 792, 795–96 (6th Cir. 1985).  That is exactly what the SSA did here, and thus it did not waive its challenge to the propriety of fees on appeal.

On the second point, the SSA did not need to raise the issue of the basis for judicial review in its other appeal because judicial review had nothing to do with the relief that the SSA seeks in that appeal.  "[R]equests for attorneys' fees 'raise[ ] legal issues collateral to the main cause of action,'" *id.* at 794 (quoting *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982)), and we may consider an appeal of a post-judgment award of attorney fees "distinct from any previous appeal on the merits," *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1106–07 (6th Cir. 2019).  The SSA's other appeal challenges only the district court's eight-month deadline to complete the Subtraction Recalculation (which is likely now moot because the Subtraction Recalculation has long been completed).  And the SSA conceded that the district court had some authority, either under § 405(g) or the Mandamus Act, to order the Subtraction Recalculation in the first place.  Because there was no reason to raise the issue of judicial review

in its other appeal, the SSA did not need to preserve it there.  Accordingly, we find it proper to address the judicial-review issue.

## C.  Judicial-Review Power under § 405(g)

Notwithstanding any preservation issues, the district court appropriately exercised its judicial-review power under § 405(g) to order the Subtraction Recalculation because it was modifying a "final decision . . . made after a hearing."  Section § 405(g)'s "final decision" provision is satisfied here because a final benefits decision was a necessary component in every claimant's case.  Without any benefits decisions, the representatives for the claimants would not collect attorney fees from representation in obtaining past-due benefits, and there would be no need for the Subtraction Recalculation.  *See* 42 U.S.C. § 406(a); § 1383(d)(2).  The resulting windfall offset and Subtraction Recalculation stem from those original benefits awards.

The SSA argues that in ordering the Subtraction Recalculation, the district court was compelling post-decisional agency action rather than reviewing any "final decisions" by the Commissioner.  That is a distinction without a difference.  Judicial review need not involve correcting the SSA's errors through reversal—as § 405(g) recognizes, the district court may also "modify" the SSA's benefits decision.  The district court's order of the Subtraction Recalculation merely implemented the district court's modification of the SSA's decision.  *See Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) (upholding district court's authority under § 405(g) to issue injunctions to implement relief).  Furthermore, the SSA had the occasion to modify its own decision by recalculating the windfall offset when the named plaintiff's counsel asked for the Subtraction Recalculation.  But the SSA squandered this opportunity, waiting until the named plaintiff filed her complaint.  *Steigerwald*, 2018 WL 454400, at *5.  The SSA's final benefits decision was a "final decision," that the agency refused to modify despite a chance to do so.  The district court properly exercised its judicial-review authority in ordering the modification.

Section 405(g)'s "after a hearing" requirement presents more of an interpretative challenge because that prerequisite is not "a matter of mere chronology."  *Smith*, 139 S. Ct. at 1775.  Instead, a "final decision" must be "tethered" to the relevant "hearing" for judicial review under § 405(g) to be appropriate.  *Id.*  For example, in *Smith*, a claimant appealed the SSA's

denial of benefits, a decision that the SSA made after a hearing. *Id.* at 1773. The SSA's Appeals Council denied the claim as untimely, and the claimant sought review of that denial in federal district court. *Id.* The Supreme Court held that the Appeals Council denial fell within § 405(g)'s ambit because the "primary application for benefits" and subsequent appeal of the denial of that application were closely tied to the hearing. *Id.* at 1775. The Court distinguished the claimant's case from *Califano v. Sanders*, 430 U.S. 99 (1977), which held that the SSA's discretionary denial of a claimant's petition to reopen a benefits award was not a "final decision . . . made after a hearing" within the meaning of § 405(g). *Smith*, 139 S. Ct. at 1775; *Sanders*, 430 U.S. at 108. Unlike a petition to reopen, which the SSA's regulations afforded as a matter of "agency grace," and could be denied without a hearing, the claimant's primary application for benefits, and subsequent appeal, were a matter of "legislative right" that required a hearing. *Smith*, 139 S. Ct. at 1775.

This case is more like *Smith* than *Sanders*. The Subtraction Recalculation entitles claimants to a portion of total benefits that the Commissioner had already determined, after a hearing, properly belong to the claimants. Any post-hearing recalculation is a modification of that decision to ensure that a claimant receives the entire award. A recalculation is "tethered" to a hearing, *id.* at 1775, because there is no discretionary step, like a decision on a petition to reopen in *Sanders*, between the initial benefits award and performing the windfall offset or the Subtraction Recalculation. *Sanders*, 430 U.S. at 108. The SSA need not hold another hearing because it must, on its own accord, perform the windfall offset and subsequent recalculation in order to satisfy its statutory obligation to ensure that a claimant receives the proper amount of benefits. That the windfall offset and Subtraction Recalculation are supposed to happen automatically shows that these procedures flow from the original award in a way that a "second look at an already-final denial" does not. *Smith*, 139 S. Ct. at 1778.

The SSA argues that performing the Subtraction Recalculation, like the decision of whether to grant a petition to reopen in *Sanders*, is a matter of regulatory "agency grace" that warrants no judicial review rather than a "legislative right" that the judiciary should ensure is vindicated. *See Smith*, 139 S. Ct. at 1775. This argument is perplexing. As a practical matter, the SSA's concession that federal law required the Subtraction Recalculations belie its assertion

that it performed the recalculations out of regulatory benevolence.  R. 96-1 (Mot. to Alter or Am. J. at 12) (Page ID #1227) (comparing case to *Heckler v. Da*y, 467 U.S. 104, 110 (1984), and stating that "[a]s in this case, *the agency had an obligation to undertake a statutorily-mandated action* but no statutory requirement to undertake that action in any specific period of time." (emphasis added)); *see also Steigerwald*, 357 F. Supp. 3d at 656 ("Defendant does not dispute that federal law requires it perform the Subtraction Recalculation.")  In fact, but for this litigation, the SSA would not have performed the Subtraction Recalculations at all.  R. 17 (Answer ¶ 101) (Page ID #153) ("Defendants deny that Plaintiff is entitled to any relief whatsoever . . . .").

Nor could the SSA argue, as a matter of law, that the Subtraction Recalculation is merely an expression of agency goodwill akin to the opportunity to reopen a prior benefits decision. Title XVI of the Social Security Act requires that, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall . . . be made by appropriate adjustments in future payments to such individual."  42 U.S.C. § 1383(b)(1)(A).  Although regulations implementing the windfall-offset provision specify that the agency "will refigure the amount of the [windfall offset] if there are subsequent changes," those regulations do not affect the statutory duty correctly to determine the proper amount of benefits owed to a claimant under § 1383.  20 C.F.R. § 404.408b(d) ("Refiguring is generally *required* where there is a change in your month of entitlement or the amount of your social security benefits or SSI payments . . . for the reduction period." (emphasis added)).

As the Supreme Court noted in *Sanders*, Congress's decision to limit judicial review in § 405(g) was "a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims."  430 U.S. at 108.  Congress understandably sought to foreclose judicial review of petitions to reopen seeking a second bite—one that an agency offered out of good will—at the apple.  The vexatious-litigation concerns that the Court expressed in *Sanders* do no not apply when claimants pursue the amount of benefits to which they are statutorily entitled. Applying the presumption that judicial review is available, especially when enforcing a

"claimant-protective statute," *Smith*, 139 S. Ct. at 1776, we hold that the district court appropriately exercised judicial review under § 405(g) in this case.

**D. Availability of attorney fees under § 406(b)**

The district court therefore properly ordered the SSA to perform the Subtraction Recalculations for the class. The remaining question to resolve is whether Class Counsel may recover attorney fees pursuant to § 406(b) for obtaining that result. Turning to the attorney fee provision at issue, § 406(b) states that

> [w]henever a court renders a judgment favorable to a claimant under [Title II or Title XVI] who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment.

When the language of a statute has a "plain and unambiguous meaning with regard to the particular dispute in the case," we are bound to follow that interpretation. *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997)).

The proceedings at issue here map onto the statutory text. The district court entered a "favorable judgment" to claimants, ordering the SSA to pay a certain sum, or a "total of past-due benefits," that was withheld for the windfall offset and never recalculated. The claimants received legal title to those benefits "by reason of" the district court's judgment. In awarding attorney fees, the district court awarded fifteen percent, or "not in excess of 25 percent," of the total of those past-due benefits. All of § 406(b)'s statutory requirements are satisfied.

The SSA argues that the claimants are not "entitled" to the recalculation amount "by reason of" the district court's judgment in this case. Any of the claimants' "entitlements" to benefits, the SSA argues, stemmed from the Commissioner's preexisting primary determination of total past-due benefits, which are always fixed by the initial benefits award. We are not convinced.

Under the SSA's reading, the claimants' entitlement under § 406(b) exists "by reason of" the SSA's final benefits decision, rather than "by reason of" the district court's judgment. As the district court explained, if that were the case, then any claimants would always be "entitled" to benefits once an SSA decision is issued, regardless of any additional benefits obtained by virtue of judicial review. *Steigerwald*, 357 F. Supp. 3d at 657–58. That reading not only contravenes the text of the attorney-fee provision but also defies its underlying logic. Attorney fees awarded in district court seek to vindicate the attorney's extra efforts "for such representation" in securing an award in district court, rather than an amount that the SSA previously fixed. *See Culbertson*, 139 S. Ct. at 522 (clarifying that "such representation" refers to representation before the district court). The district court correctly observed that there are two relevant awards in this case: one award for the original benefits and the additional benefits awarded as a result of this case. *Steigerwald*, 357 F. Supp. 3d at 658. In other words, the "by reason of [the district court's] judgment" clause reveals that the "total" in "total past-due benefits" refers not to a fixed amount predetermined by the SSA's original decision, but rather to the entire sum of past-due benefits that the *district court* awarded to claimants.

Like the district court, we are not concerned that counsel may recover twice from claimants' initial benefits awards. *Id.* The SSA rightly points out that counsel may have previously obtained attorney fees from securing a primary claim for benefits in district court, and that the Subtraction Recalculation amount is a subset of that total. But again, under the plain text of the statute, the "total" of past-due benefits is tied to the district court's judgment, rather than a pool of money that the SSA fixes at the benefits stage. As the district court observed, "[i]t may be unfortunate that Plaintiffs had to bring suit twice to obtain the full amount of past-due benefits owed them. . . . But there is no more injustice in this case than in any other situation where Plaintiffs must hire counsel to vindicate their rights." *Id.*

Finally, the SSA argues that § 406(b)(1)(B)(ii), which states that "amounts of past-due benefits shall be determined before any applicable reduction under [the windfall offset provision] of this title," means that the court may not award fees for any benefits obtained any time after the SSA performs a windfall offset. The SSA gleans too much from this provision. Section 406(b)(1)(B)(ii) tells the district court how to calculate attorney fees, not whether to award fees

at all. The provision aims to maximize the award of attorney fees before the SSA further reduces any money that is due to claimants. Here, when the exercise of judicial review modifies the award to grant benefits that the SSA should have granted in the first place, of course there is no subsequent reduction for the SSA to apply. It would contravene common sense to deny attorney fees outright in reliance on a statute that aims to maximize them.

The attorney-fees provision at issue here incentivizes attorneys to vindicate the rights of claimants who, in many cases, cannot afford counsel. The SSA failed to award claimants additional past-due benefits to which they were entitled. Counsel successfully sought judicial assistance to obtain those benefits, and § 406(b) envisions a reward for that effort. Congress did not create a statute that allows attorneys to recover fees when the SSA initially fails to award benefits, only to foreclose fee recovery when the SSA later unlawfully withholds additional benefits. We decline to draw an arbitrary line between an original and an additional award of benefits to bar judicial review and attorney fees. We hold that the district court correctly determined that Class Counsel were eligible for fees under § 406(b).

## IV. REASONABLENESS OF ATTORNEY FEES

The deference that we must afford to district-court judges carries the day for assessing reasonableness. *Gisbrecht*, 535 U.S. at 808. The district court awarded Class Counsel a fifteen-percent fee, one below § 406(b)'s statutory cap. Exercising its discretion, the district court considered the relevant factors that the Supreme Court outlined in *Gisbrecht*: the difficulty of the case, the character of the representation, the lack of delay on counsel's part, and the results that counsel achieved. *Id.* Although the district court noted the disparity between Class Counsel's requested award and the time spent on the case (and indeed, awarded Class Counsel less than they requested), the court thoroughly explained why its fee award nonetheless furthered § 406(b)'s aims. *Steigerwald*, 2020 WL 6485107, at *5–6. Affording the district court the "highly respectful review" that it is due, we affirm its finding that Class Counsel's award was reasonable. *Gisbrecht*, 535 U.S. at 808.

## V.  CONCLUSION

The district court properly exercised its power under the Social Security Act to modify the SSA's final benefits determinations in ordering the SSA to perform statutorily obligated recalculations.  For those efforts, the Social Security Act allows Class Counsel to recover attorney fees.  Deferring to the district court in determining the reasonableness of those fees, we AFFIRM the district court's judgment.

———————————

**DISSENT**

———————————

KETHLEDGE, Circuit Judge, dissenting. The district court's fee award in this case was a serious mistake. The question presented is whether authority for the award came from the Social Security Act, specifically 42 U.S.C. § 406(b). That section authorized the district court to award fees only in cases where the court "renders a judgment favorable to a claimant *under this subchapter*." (Emphasis added.) The relevant "subchapter" comprises 42 U.S.C. §§ 401-434. The court could award fees under § 406(b), therefore, only if its injunction in favor of the plaintiff class was issued under one of those sections.

The section under which the district court purported to grant the injunction was § 405(g). That provision—entitled "Judicial review"—provides in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision[.]

For § 405(g) to apply, therefore, the claimant must seek review of (1) "any final decision" of the Commissioner (2) "made after a hearing to which he was a party[.]" *See Mathews v. Eldridge*, 424 U.S. 319, 327 (1976). And having met those prerequisites as to a decision of the Commissioner, the claimant "may obtain a review of *such decision*." *Id.*

Neither prerequisite was met here. As to the first, "the phrase 'final decision' clearly denotes some kind of terminal event." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019). But here Steigerwald does not challenge any event at all; instead, as the district court acknowledged, "there is no SSA action to challenge through the administrative review process. Instead, SSA has simply delayed performing, or failed to perform, part of its required review of a claimant's benefits." Nor was there any hearing regarding that same failure to perform. The *casus belli* for this suit was an *omission* as to which there was no hearing, not a final decision made after one. That is reason enough to reverse the fee award here.

Nor has Steigerwald sought "review" of a final decision of the Commissioner. The district court asserted (and the majority reiterates here) that its injunction "modified" the Commissioner's earlier decisions awarding benefits to Steigerwald and the unnamed class members. But Steigerwald's Complaint did not seek *review* of any aspect of those decisions; indeed the Complaint was filed years after the statute's 60-day deadline for seeking review of them. *See* 42 U.S.C. § 405(g). Instead, the Complaint demanded that the Commissioner perform a "Substitution Recalculation" under 20 C.F.R. § 416.1123(b)(3) for each class member. The Complaint thus sought to compel new action by the Commissioner, rather than review of a decision the Commissioner had already made. Nor did Steigerwald present her demand for a Substitution Recalculation to the Commissioner before presenting that demand to the district court. Steigerwald therefore has failed to satisfy a non-waivable "jurisdictional" requirement for the application of § 405(g). *See Eldridge*, 424 U.S. at 328 (internal quotation marks omitted). Hence this suit patently did not meet the prerequisites of § 405(g). The district court therefore did not issue its injunction "under this subchapter[,]" which means the court lacked authority to award fees under § 406(b).

The lawful source of authority for a fee award to Steigerwald's lawyers was instead the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(A). That is the usual source of authority for awarding fees "to the prevailing party in any civil action brought by or against the United States[.]" *Id*. § 2412(a)(1). Under that Act, counsel may obtain an award of fees based on "the actual time expended and the rate at which fees and other expenses were computed." *Id*. § 2412(d)(1)(B). And under a generous application of that formula, Steigerwald's lawyers might have been entitled to about $700,000 for their efforts—payable by the government itself. Yet here—after some modest motion practice, in a case where the government all but conceded liability—the district court awarded Steigerwald's lawyers some $16 million. And that amount is payable not by the government, but by the needy class members themselves—since the fee award is paid out of benefits owed to them. 42 U.S.C. § 406(b)(1)(A).

The government is entirely correct to characterize the fee award in this case as both unlawful and egregious. I respectfully dissent.